UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION No. 16-CR-10096(3s) |
| v. | |
| DENZEL CHISHOLM, | |
| Defendant | |

GOVERNMENT OPPOSITION TO DEFENDANT CHISHOLM'S MOTIONS

Comes now the United States of America, by William D. Weinreb, Acting United States Attorney, and Eric S. Rosen and Miranda Hooker, Assistant United States Attorneys for the District of Massachusetts, and files this opposition to Defendant Denzel Chisholm's motions *in limine*:

**MOTION IN LIMINE TO PRECLUDE GANG REFERENCES**

1. Defendant Chisholm does not appear to deny that he was a member of the feared Nauti-Block gang in Hyannis. Instead, Defendant primarily argues that evidence of Defendant's participation in the Nauti-Block gang is irrelevant to the charged crimes. To the contrary, Defendant's participation, membership and leadership in the Nauti-Block gang is directly relevant to the charged conspiracies because it sheds significant light on the relationship between the various co-conspirators and Defendant, and further explains how Defendant was able to successfully enlist others to assist him in his drug trafficking business.

1

2.      The rules of evidence contemplate the admission of evidence that is relevant to the charged crimes.  Fed. R. Evidence 403 provides that a Court may exclude relevant evidence if, and only if, "its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

3.      Here, the Government intends to introduce very limited evidence of the Nauti-Block gang.  At most, the Government will have police officers and/or cooperating witnesses explain the structure of the gang and the hierarchical relationships amongst the key members of the drug trafficking organization, which included Chisholm, Chapman, Wilkins and Mejia. Accordingly, the membership of the abovementioned individuals in the Nauti-Block gang is directly relevant to the three conspiracies charged in this case because it demonstrates the relationship between them, which is the central aspect of a conspiracy case.  The Government's evidence will be limited and will directly focus on the gang relationships, which provided the backbone of the drug relationships.

4.      Courts have regularly allowed limited evidence of gang membership when it is relevant to demonstrate the existence of a joint venture or conspiracy.  *See, e.g., United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997) (evidence of "gang affiliation is admissible in cases in which it is relevant to demonstrate the existence of a joint venture or conspiracy and a relationship among its members"); *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996) (affirming ruling allowing gang evidence because that evidence "helped demonstrate the existence of the conspiracy and the connections between members of the conspiracy"); *United States v. Sloan*, 65 F.3d 149,  150 (10th Cir. 1995) (gang activity properly admitted to show basis of relationships between defendant and witnesses who participated in the drug distribution

operation); *United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014) ("Evidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case.").

5. Defendant's arguments against admission of this limited evidence are meritless. Defendant contends that membership in a "gang" is not "evidence of conspiracy." In fact, as noted above, Courts have regularly concluded that the essence of a "conspiracy" is the relationship between the conspirators, and that joint membership in a street gang is probative of that issue. Indeed, without background knowledge concerning the gang relationship between Chisholm and Browning Mejia, jurors will be left puzzled as to why Chisholm was funneling suboxone into MCI-Norfolk prison on Mejia's behalf when the telephone calls make clear that Chisholm was losing money procuring the suboxone. The gang membership evidence simply completes the picture of the crime for the jury.

6. Next, Defendant misses the point when he write that gang membership provides no evidence of Chisholm's motives. First, motive is not an element of the charged crimes. Second, gang membership does explain the relationship between the various drug dealers, and it explains why Chisholm, as noted above, was shipping narcotics to Mejia inside MCI-Norfolk despite losing money. This gang membership, and not "money," was Chisholm's motive to engage in the suboxone conspiracy.

7. Finally, Defendant contends that the evidence of Chisholm being in a gang is simply too prejudicial. The Government responds that the evidence is highly probative of the relationship between the co-conspirators, and that the Government's evidence will be limited and sanitized. Further, the Government consents to a proper limiting instruction issued by this Court which will prevent? any undue prejudice suffered by Defendant.

## MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF DEFENDANT'S PERSONAL SEXUAL EXPERIENCES

8. Defendant Chisholm has filed a self-styled motion in limine to "exclude personal sexual habit evidence" requesting that the Government and witnesses refrain from "testifying about Mr. Chisholm's private sexual life." In so arguing, Defendant appears to conflate two issues – 1) his private sexual life and 2) his involvement in trading sexual favors for heroin with multiple women. The Government is not seeking to introduce evidence of the former, but the Government believes that evidence of the latter is highly relevant and probative of the heroin distribution crimes for which Defendant is charged.

### A. Background

9. The Government's intensive wiretap investigation of Chisholm revealed that he was sexually involved with numerous women during the pendency of the conspiracy. In fact, Defendant was sexually involved with at least three of his co-defendants in this case. In addition, Defendant had at least two longer-term girlfriends who were repeatedly intercepted on the wiretap. As the Government has noted in other filings, Defendant's sexual relationship with Molly London has provided evidence of London's motive to engage in the crimes charged. Further, although Eelyese Mateo has pled guilty, evidence of her sexual relationship (and subsequent pregnancy) explains why she conspired with Chisholm to store large quantities of heroin at her home, collect heroin for Chisholm, and distribute heroin to Chisholm's customers.

10. As is pertinent here, although Defendant primarily distributed large quantities of heroin to other drug dealers, Defendant also distributed smaller quantities of heroin to a few female customers. The evidence collected by the Government demonstrated that Defendant repeatedly traded heroin for sex with two female individuals.

11. For example, investigators regularly intercepted telephone calls and text messages between Chisholm and Female-1 ("BZ") where Chisholm discussed providing heroin to BZ. BZ was not a heroin dealer but rather a user. On February 1, 2016, Chisholm wrote to BZ, "We getting up," and BZ replied, "Yeahh u givin me some fire?" "Fire" is a slang term for high quality heroin. On February 5, 2016, BZ called Chisholm and they discussed providing BZ with an additional quantity of heroin. BZ complained about the quality of the heroin that Chisholm was providing; however, BZ agreed to accept this heroin because she was "so sick" from heroin withdrawal. Additional calls between BZ and Chisholm, most notably on February 10, 2016, confirmed that Chisholm was only supplying BZ with heroin in exchange for sexual favors.

> CHISHOLM: What's going on, lying? I know it's not your birthday
> BZ: What?
> CHISHOLM: You told me it was your birthday a couple days ago
> BZ: No. I told you my birthday was coming up and I told you my birthday was in a couple days
> CHISHOLM: Mmmm…hmm.
> BZ: You remember?
> CHISHOLM: Alright so what are you going to give me for your birthday?
> BZ: Well, it all depends on how great my birthday present is …
> CHISHOLM: Yeah. You caught me at a bad time cause I'm broke.
> BZ: Oh we know.
> CHISHOLM: **I'm broke and I don't got no D[ope].**
> BZ: That's fine. Cash works too. I love cash for presents.
> CHISHOLM: You know.. I'm broke I don't got no money either. So this time's gonna be on the house and then the next time… I'll see what I can do.
> BZ: Really?
> CHISHOLM: Yeah!
> BZ: Well…
> CHISHOLM: Why not? We're not at the stage where you can't just suck my dick for fun now?
> BZ: No we are, it's just it's my birthday.
> CHISHOLM: Shit it's my birthday. That sounds like an excuse to me.
> BZ: What?
> CHISHOLM: Sometimes I just be like damn like I can't just you can't just know what I'm saying get up with me for fun.
> BZ: No I could.
> CHISHOLM: **Does this always gotta be a business venture?**
> BZ: It's fine.

> CHISHOLM; Since it's your birthday I'm gonna try and make something happen for you...but
> BZ: What are you doing?
> CHISHOLM: I'm fuckin driving around, trying to take over the world.

12.     Likewise, investigators intercepted telephone calls and conducted surveillance between Female-2 ("TM") and Chisholm where Chisholm was seen supplying TM with heroin. Investigators do not believe Chisholm would actually exchange sex for heroin. Rather, Chisholm made TM engage in sexual activities in exchange for allowing TM to purchase heroin from him with cash. In essence, the sexual favors were the "price of admission" for TM to be allowed the benefit of being able to purchase heroin.

13.     Investigators intercepted dozens of calls between TM and Chisholm where Chisholm and TM were arranging for heroin purchases. On February 17, 2016, TM was provided heroin by Chisholm to test, and TM replied with a favorable review. On March 23, 2016, TM complained that even though she provided Chisholm with $1,000 in cash each week, he continued to ignore her. Investigators witnessed multiple drug deals between TM and Chisholm, some of which occurred at or around 131 Chase Street, the home of co-defendant Molly London.

14.     Chisholm was also not shy about demanding sexual favors from TM before he would agree to provide her with heroin. An example of this occurred on February 12, 2016:

> TM: Nothing, I was seeing if I don't know if you're not busy or something.
> CHISHOLM: Um what are you trying to do?
> TM: I don't know, ninety.
> CHISHOLM: Alright let me call this kid see if he's trying to meet you.
> TM: You can't just do it?
> CHISHOLM: Uh...it's a lot of work
> TM: Well is it the same kid?
> CHISHOLM: Why you don't like Tax?
> TM: Not really.
> CHISHOLM: I don't know what he's doing to it.
> TM: Huh?

>    CHISHOLM: Said I don't know what he's doing to it...Maybe you should get ninety and you try and suck my dick I might be able to meet you
>    TM: And actually hook me up.
>    CHISHOLM: Huh?
>    TM: And like really hook me up?
>    CHISHOLM: I'll see what I can do.
>    TM: Well can it be right now because I don't feel good.

15. As the Court can see, while Defendant claims that these sexual encounters were part of Defendant's "personal sex life," in fact, it is readily apparent that the evidence the Government will introduce at trial is part and parcel of, and inseparable from, Defendant's heroin distribution business. Although Defendant claims that these sexual encounters were consensual, in reality Defendant preyed upon the violent withdrawal that heroin addicts face when they do not receive a regular heroin fix. Defendant used these heroin cravings to his advantage, as these two women did whatever it took to get more heroin to feed their addictions.

### B. Legal Argument

16. Defendant cannot seriously deny that encounters where he traded sex for drugs (or traded sex for the opportunity to purchase drugs) are irrelevant to the fact that he is charged with distribution of heroin and conspiracy to distribute heroin. *See* Fed. R. Evidence 401 ("relevant evidence" is evidence tending to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Indeed, providing anyone with heroin counts as distribution, whether its for money, personal goodwill, or, as in these cases, sexual acts. Having chosen to distribute heroin in this manner, Defendant now seeks Court sanction to hide the scandalous nature of his actions by precluding what is clearly relevant evidence. This should not be countenanced.

17. "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Miquestoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to

tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C.Cir. 1998). Indeed, the Government could not find a single case where evidence of sex for drugs was barred in a trial involving drug trafficking. To the contrary, Courts have long allowed such evidence to be admitted. *See, e.g., United States v. Kibler*, 279 F.3d 511, 517 (7th Cir. 2002) (rejecting Defendant's argument that evidence involving trading sex for crack was unduly prejudicial; "government is not prevented from eliciting testimony regarding relevant drug transactions, solely because payment for those drugs are made in the form of food stamps or sex rather than cash …"); *United States v. Davis*, 154 F.3d 772, 785 (8th Cir. 1998) (eliciting testimony regarding sex for drugs was not prosecutorial misconduct because it was "relevant to how the conspirators distributed drugs and why their incomes may not have accurately reflected their drug sales."); *United States v. Gregory*, 74 F.3d 819, 822-23 (7th Cir. 1996) (evidence of trading sexual favors for crack was probative of defendant's intent, membership in the conspiracy, and distribution of the narcotics).

18. In seeking to exclude this relevant evidence, Defendant, as noted above, characterizes this evidence as his "personal sex life." Nothing could be further from the truth. In fact, during the call with BZ that is excerpted above, Defendant, when soliciting oral sex from BZ, complains, "does this always gotta be a business venture?" This statement, standing alone, confirms that even Defendant knew that trading sex for drugs was simply a "business venture" that was part and parcel of his heroin trafficking.

19. Defendant next contends his "consensual sex with co-defendants" does not "tend" to prove that they also agreed to commit violations of the Controlled Substances Act. In fact, as the Government described in its Trial Brief, Molly London's sexual relationship with Chisholm shows her motive to assist in his drug trafficking organization. Further, that Chisholm had sex

with and impregnated Eelyese Mateo, also demonstrates why Mateo helped Chisholm transport and sell heroin.

20. Finally, Defendant argues that evidence of his sexual relations would be "highly inflammatory." However, as noted above, the evidence is highly probative of Defendant's guilt of the charged crimes. Further, viewed against the totality of the evidence that will be presented – massive heroin trafficking, firearms, and drug overdoses – it is difficult to see how brief telephone calls concerning trading of sex for drugs is so "highly inflammatory" so as to preclude its admission. *See* Fed. R. Evidence 403 (evidence may be excluded only if its probative value is "*substantially outweighed*" by unfair prejudice).

## CONCLUSION

In sum, Defendant Chisholm's motions *in limine* should both be denied.

Respectfully submitted,

WILLIAM D. WEINREB
ACTING UNITED STATES ATTORNEY

By:  /s/Eric S. Rosen
ERIC S. ROSEN
MIRANDA HOOKER
ASSISTANT UNITED STATES ATTORNEYS
617/748-3412

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

    /s/Eric S. Rosen
Eric S. Rosen
Assistant United States Attorney

Date: May 8, 2017