UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION No. 16-CR-10096(3s) |
| v. | |
| DENZEL CHISHOLM AND MOLLY LONDON, | |
| Defendants | |

GOVERNMENT'S SUPPLEMENTAL TRIAL BRIEF

Comes now the United States of America, by William D. Weinreb, Acting United States Attorney, and Eric S. Rosen and Miranda Hooker, Assistant United States Attorneys for the District of Massachusetts, and files this supplemental trial brief addressing issues raised by the Court and defense counsel during the first week of trial in this matter:

**THE GOVERNMENT'S CASE AGAINST CHISHOLM AND LONDON**

**A. The Government's case against Denzel Chisholm**

1.      As the Court is aware, the Government's case against Defendant Chisholm is premised on four primary forms of evidence: controlled purchases of heroin, evidence obtained from search warrants executed on April 5, 2016, intercepted wiretap calls, and "non-controlled" heroin seizures. The Government believes that a brief summary of each charged substantive

1

count concerning Denzel Chisholm will help assist this Court in rendering any directed verdict motion:

    a.    Count 2 – possession of heroin with the intent to distribute on February 26, 2016. This count refers to a controlled purchase of heroin made from Denzel Chisholm on February 26, 2016. **10 grams of heroin** were purchased from Mr. Chisholm. The evidence regarding this count has not yet been introduced at trial. The evidence will consist of testimony regarding surveillance by Barnstable Police Officers (Guiney and Ginnetty), recorded audio and video introduced through the cooperating witness (Exs. 363-1, 363-2, 363-3, 363-4), and heroin recovered by the police officers and tested by the Massachusetts State Drug Laboratory chemist (Nevin Vigneault), who will also testify.

    b.    Count 3 – possession of heroin with the intent to distribute on March 2, 2016. This count refers to a controlled purchase of heroin made from Denzel Chisholm on March 2, 2016. **50 grams of heroin** were purchased from Mr. Chisholm. The evidence regarding this count has not yet been introduced at trial. The evidence will consist of testimony regarding surveillance by Barnstable Police Officers (Guiney and Ginnetty), recorded audio and video introduced through the cooperating witness (Exs. 364-1, 364-2, 364-3), and heroin recovered by the police officers and tested by the Massachusetts State Drug Laboratory chemist (Nevin Vigneault), who will also testify.

    c.    Count 4 – possession of 100 grams of heroin with the intent to distribute on March 3, 2016. This count refers to a controlled purchase of heroin made from Denzel Chisholm on March 3, 2016. **201 grams of heroin** was purchased from Mr. Chisholm. The evidence regarding this count has not yet been introduced at trial. The evidence will consist of testimony regarding surveillance by Barnstable Police Officers (Guiney and Ginnetty), recorded

audio and video introduced through the cooperating witness, and heroin recovered by the police officers and tested by the Massachusetts State Drug Laboratory chemist (Nevin Vigneault), who will also testify.

      d.      Count 5 – possession of heroin with the intent to distribute on March 8, 2016. This count refers to a controlled purchase of heroin made from Denzel Chisholm on March 2, 2016. **50 grams of heroin** were purchased from Mr. Chisholm. The evidence regarding this count has not yet been introduced at trial. The evidence will consist of testimony regarding surveillance by Barnstable Police Officers (Guiney and Ginnetty), recorded audio and video introduced through the cooperating witness (366-1, 366-2, 366-3, 366-4, 366-5), and heroin recovered by the police officers and tested by the Massachusetts State Drug Laboratory chemist (Robert Gleba), who will also testify.

      e.      Count 14 – possession of heroin with the intent to distribute on February 4, 2016. This count refers to the seizure of **six grams** of heroin from Oliver Hamilton on February 4, 2016, after investigators intercepted telephone calls and witnessed a suspected drug transaction between Hamilton and Chisholm. This past week, the government introduced exhibits 27, 30, 46, 49 and 202. In these calls and text messages, on February 2, 2016, Hamilton seeks to purchase 100 grams of heroin and Chisholm directs Hamilton to his "spot" (131 Chase Street, home of London). The next day, Hamilton calls and complains about the quality of the heroin, telling Chisholm that customers are stating that it "burns." Chisholm promises to replace it. On February 4, 2016 at approximately 7:30 p.m., Chisholm made plans to meet Hamilton, and in a further call, Chisholm stated that he was walking down Oak Neck Road (near London's residence). In testimony this coming week, investigators will describe how on February 4, 2016,

3

they witnessed Chisholm meet with Hamilton (Guiney), and then investigators stopped Hamilton and recovered six grams of heroin from his vehicle (Foley, Sarah Clark Horst).

        f.      Count 15 – possession of heroin with the intent to distribute on November 16, 2015. This count refers to the **100 grams** of heroin drug deal between Brooke Cotell/Shaun Miller and Denzel Chisholm. This Court has already heard the testimony of Cotell and Miller, who described the drug deal in detail. This government also introduced the text messages between Cotell and Chisholm, in which Cotell arranged for the 100 gram purchase of heroin from Chisholm on November 16, 2015 (Ex. 623). In the coming week, this Court will hear from the Barnstable Police Officers (Guiney and Ginnetty) who witnessed the drug deal and who recovered the heroin from Miller as he tried to destroy it (Guiney and Sarah Clark Horst). Further, the telephone used by Chisholm to arrange the transaction (Ex. 422) was recovered from him on April 5, 2016, during the search of 80 Winslow Gray Road.

        g.      Count 16 – possession of heroin with the intent to distribute on March 6, 2016. This count refers to the recovery of **12 grams** of heroin from Tyrone Gomes on March 6, 2016. This heroin was hidden in Gomes' navel at the time of Gomes' arrest. The calls and video leading up to the drug deal have all been admitted into evidence. In Exhibit 117, on March 6, 2016, Gomes calls Chisholm and asks him if the "blue magic," referring to blue-tinted heroin was still around. In Exhibit 118, Gomes calls Chisholm and arranges to make a deal for 12 grams of heroin – 10 grams for cash plus an additional two grams in exchange for 10 suboxone. Gomes then told his customers that he was getting "blue shit fire," referring to blue heroin (Exhibit 119). In Exhibit 121, Chisholm directs Gomes toward the home of Bethanne Hutchings (43 Erin Lane). In Exhibit 318, Mateo delivers the heroin to Chisholm at 43 Erin Lane, and then in Exhibit 319, the jury watched Gomes walk up to 43 Erin Lane, meet closely with Chisholm

and then walk away.  This week, the jury will hear about the traffic stop of Gomes' car (Guiney), and the subsequent recovery of 12 grams of heroin from Gomes (Guiney and Robert Gleba).

        h.      Count 23 – possession of 100 grams or more of heroin with the intent to distribute on March 24, 2016.  This count refers to a controlled purchase of heroin made from Denzel Chisholm on March 24 2016.  **119 grams of heroin** were purchased from Mr. Chisholm.  The evidence regarding this count has not yet been introduced at trial.  The evidence will consist of testimony regarding surveillance by Barnstable Police Officers (Guiney and Ginnetty), recorded audio and video introduced through the cooperating witness (368-1, 368-2, 368-3, 368-4), and heroin recovered by the police officers and tested by the Massachusetts State Drug Laboratory chemist (Sarah Clark Horst), who will also testify.

        i.      Counts 30 and 31 – conspiracy to distribute suboxone, and possession of suboxone with the intent to distribute on April 5, 2016.  The jury has already heard numerous calls regarding the procurement of suboxone by Chisholm and the distribution of said suboxone to inmate Browning Mejia at MCI-Norfolk jail.  In that regard, the jury heard evidence of a February 27, 2016 drug deal between Chisholm and Brendan MacDonald, where Chisholm traded 15 grams of heroin for 40 suboxone (Exs. 91, 95, 96, 99, 101 and 102).  This week, the jury will hear of investigators' surveillance of this drug deal.  The jury also heard a February 27, 2016 call between Gomes and Chisholm (Ex. 94), where Gomes and Chisholm discussed a heroin for suboxone exchange, and Gomes specifically told Chisholm that he was "basically selling me suboxones for $10 dollars a sub."  Further, the March 6, 2016 heroin deal referenced above was part of a heroin for suboxone exchange.  Finally, the jury will also hear a recording of a heroin transaction between Chisholm and a cooperating witness, and during the heroin deals, Chisholm repeatedly asked for suboxone, and he explained to the cooperator that he was

distributing the suboxone in MCI-Norfolk.  Count 31 refers to the recovery of a box of suboxone from Chisholm on April 5, 2016 during the search of his home at 80 Winslow Gray Road.

        j.      Count 28 – use of a communications facilities to distribute suboxone, a Schedule III controlled substance on February 29, 2016 at 8:03 p.m.  As noted above, Chisholm was heavily involved in trafficking suboxone into MCI-Norfolk.  Chisholm was doing this on behalf of his friend and associate, Browning Mejia.  Count 28 references a February 29, 2016 call between Mejia and Chisholm, admitted as Exhibit 104, in which Mejia and Chisholm first discussed amounts of money owed to Mejia and to others, and then discussed the procurement of more suboxone for Mejia.  Notably, Chisholm specifically states that he is acquiring the drugs for "10," which, as noted above, was the exact same price that Gomes stated in Exhibit 94, "selling me suboxones for $10 dollars a sub."

        k.      Count 32 – possession of heroin with the intent to distribute and aiding abetting said possession on April 5, 2016.  This count charges both London and Chisholm with possession with intent to distribute, and aiding and abetting the same, the 77 grams of heroin found inside London's home on April 5, 2016.  This heroin will be introduced into evidence through Lisa Rudnicki of the ATF and Massachusetts State Drug Laboratory chemist Erin Miller.  London lived in this home alone, and in the days leading up to this discovery, the jury has already heard numerous drug deals between Chisholm and other dealers take place in and around London's home.  While the heroin inside the home undoubtedly belonged to Chisholm, London is charged with aiding and abetting, by knowingly allowing Chisholm to store his heroin packaging tools, his heroin cut, and his heroin at her home, and allowing him to do heroin deals in and around her home.

l.      Count 33 – possession of a firearm in interstate commerce by a felon on April 5, 2016.  The parties have stipulated that Chisholm is a convicted felon and also that the Glock .357 found in a vehicle parked outside Chisholm's home traveled in interstate commerce.  This past week, the Government introduced into evidence testimony from Mr. Serriello in which he stated that Mr. Chisholm sold him multiple firearms in the past.  In addition, Exhibit 187 is a call between Chisholm and Cunha on March 31, 2016, just a few days before the Glock was recovered, in which Chisholm asked for a "joint."  Special Agent Hayes testified that, based on his training and experience, including his knowledge of the investigation into Chisholm, in the context of the call, a "joint" was a firearm.  In Exhibit 183, a call between Chisholm and William Branch on March 29, 2016, Branch stated that he did not have "no more pretty joints … ain't no more of them other joints."  To this, Chisholm replied, "I'm really trying to get stuff for my man that's fuckin like from like different area."  Branch replied, "alright yeah yeah, I got you.  I know there's like a good little eight and like this little trey pound like I can get some I could get one of them shits."  At trial, Agent Hayes interpreted the term "trey pound" to mean a .357 caliber firearm.  Yarmouth Police Officer Kal Bogdhan will testify that during the April 5, 2016 search of Chisholm's home, he found a firearm in a vehicle parked on the property.  This firearm was wrapped in plastic.  State Police forensic examiner David Mackin will testify that Chisholm's fingerprints were on this firearm.

2.      The Government has charged Defendant Denzel Chisholm with conspiracy to distribute and possess with intent to distribute 1 kilogram or more of heroin.  As charged, the conspiracy lasted from 2011 to April 5, 2016, although Defendant Chisholm did not join the conspiracy until his release from prison in 2013/2014.  The events from 2011 to 2013/14

primarily reference Christian Chapman.  The Government's evidence of the kilogram will come from the following sources, amongst others:

3. First, the Government purchased approximately **430 grams** of heroin from Chisholm, as described above.

4. Second, the Government seized heroin from third parties, who purchased said heroin from Chisholm.  These seizures include:

   a. The seizure of heroin from Cotell and Miller on November 16, 2015. Although the amount of heroin seized was small due to the fact that it had largely been destroyed, the text messages and witness testimony clearly indicate a deal for **100 grams**.

   b. On March 6, 2016, the Government seized **12 grams** of heroin from Tyrone Gomes, who had purchased it from Denzel Chisholm,

   c. On February 4, 2016, the Government seized **6 grams** of heroin from Oliver Hamilton, who had received the heroin from Chisholm

   d. On April 5, 2016, the Government seized **77 grams** of heroin from Molly London, and the evidence has indicated that this heroin was being held in her house for Denzel Chisholm, and

   e. On May 21, 2015, the Government seized **400 grams** of heroin from Richard Serriello.  Text messages confirm that Serriello was meeting with Chisholm prior to the deal, and a phone used by Chisholm in the text messages was recovered from Chisholm at 80 Winslow Gray on April 5, 2016 (Ex. 436).  Most notably, in a conversation between a cooperating witness and Chisholm on March 15, 2016, which was recorded and will be played for the jury on Monday (Ex. 367-4), Chisholm tells the cooperator that "Ricky Serriello" had

been "bagged with a half brick" that had come from Chisholm and that Chisholm had been providing Serriello with "half a brick he was coming ever week half a brick."

5.   Thus, the Government's controlled purchases and corroborated drug seizures during the conspiracy amount to **1,025 grams**.

6.   In addition to that, a number of cooperating witnesses have or will have testified at trial that add vast quantities of heroin to the drug weight here:

   a.   Brooke Cotell testified that she did 10-15 heroin deals with Mr. Chisholm in amounts ranging from 50 to 100 grams. Cotell's testimony is corroborated by Shaun Miller, by telephone toll records showing significant contact between Chisholm and Cotell (Ex. 613), by recovered text messages indicating a drug dealing relationship between Cotell and Chisholm (Ex. 623), and by officer surveillance of a transaction between Cotell/Miller and Chisholm as well as the subsequent recovery of heroin.

   b.   Shaun Miller testified that he and Cotell jointly purchased 50 to 100 grams of heroin from Chisholm on at least three occasions.

   c.   Stephanie Davis testified that she operated a stash/chop house for Christopher Wilkins and Chisholm at 12 Circuit Avenue. Davis had been purchasing heroin from Wilkins since 2013, and then, in 2014, she met Chisholm. Davis purchased approximately five grams from Chisholm at a time multiple times each week up through 2016. More importantly, Davis testified that Chisholm and Wilkins used her apartment to press and mix narcotics. Davis explained how they would frequently bring over 10 to 30 grams of raw heroin, which they would mix with cut (including Dormin) and turn that into bricks of heroin, each one of which contained hundreds of grams of heroin. At one point, Chisholm and Wilkins left with five bricks of heroin. Davis' testimony is corroborated by intercepted calls, a drug seizure, and

telephone toll records.  If the jury believes Stephanie Davis (as well as Chas Sexton), they will find Chisholm guilty of a conspiracy involving one kilogram of heroin.

        d.      Chas Sexton also testified and he corroborated Davis' testimony, in that he testified that Chisholm and Wilkins used 12 Circuit Avenue as a location to mix and bag heroin.  They turned smaller quantities of raw heroin into bricked heroin that was provided for further distribution onto others.  Sexton's testimony too is corroborated by Davis, telephone toll records and surveillance.

        e.      Richard Serriello testified that the 400 grams of heroin he was arrested with on May 21, 2015 came from Chisholm, and that he had been regularly receiving heroin from Chisholm (partially fronted, partially paid for) for about one year.  Chisholm had regularly been supplying Serriello with 500 grams of heroin at a time.  Serriello's testimony is corroborated by the seizure of heroin, telephone toll records, recovered text messages and, most importantly, Chisholm's own admissions – recovered on video – that he had been supplying Serriello a "half brick a week."  In addition, Serriello's arrest report from May 21, 2015 was found in Chisholm's possession on April 5, 2016.

        f.      Finally, Sean Pratt will testify at trial that he received 200 grams of heroin from Chisholm at a time on multiple occasions.  Pratt's testimony is corroborated by intercepted telephone calls between Chisholm and Pratt, testimony of Brooke Cotell, and the seizure of heroin from Pratt's home on April 5, 2016 by Sgt. Scott McCabe on the Massachusetts State Police.

    7.      All of these cooperating witnesses, who in and of themselves corroborate each other, place dozens of kilograms of heroin on Denzel Chisholm and confirm Davis' testimony, which is that Chisholm is the "biggest drug dealer" that she knew.

8.     Finally, the Government's case involving the kilogram of heroin also rests of intercepted telephone calls between Chisholm and co-conspirators, both charged and uncharged.

   a.     On January 29, 2016, Chisholm delivered heroin to Tyrone Gomes. Chisholm brought the heroin from his stash house, located at 131 Chase Street (home of Molly London), and delivered it to Gomes in the vicinity of that area.  Although the amount of the heroin was not discussed during the calls leading up to the deal, Gomes told Chisholm that he had "four sticks left," meaning that he still had 40 grams of heroin left.  Thus, the drug deal involved at least 40 grams.

   b.     On February 2, 2016, Chisholm arranged a deal for 100 grams of heroin with Oliver Hamilton (Ex. 30); this deal took place at 131 Chase Street in Hyannis.  Subsequent calls confirmed that the heroin was of poor quality.  Two days later, Chisholm provided Hamilton with another six grams of heroin in the vicinity of 131 Chase Street.  This heroin was recovered from Hamilton in a car stop after the deal took place.

   c.     On February 4, 2016, Gomes called Chisholm and asked for 50 grams of heroin.  Investigators later saw Gomes collect the heroin where Chisholm had left it by the black chain-link fence.  Additional calls indicate that Gomes had successfully recovered the heroin.

   d.     On February 19, 2016, Gomes wrote to Chisholm, stating, "I just lined something up for 200," referring, Agent Hayes explained, to 200 grams of heroin (Ex. 77). Investigators later saw Gomes and Chisholm meet at 263 Sudbury Lane, which was a home Chisholm used to complete drug deals.

   e.     That same day, on February 19, 2016, Pratt sent text messages to Chisholm stating, "I got 200 to trade."  Agent Hayes testified that this call concerned 200 grams of heroin, and Pratt will testify that it concerned 200 grams of heroin.  Investigators watched

Pratt meet with Chisholm at 263 Sudbury Lane, and a call the next day confirmed that the deal had taken place.

      f.      On February 27, 2016, Chisholm traded 15 grams of heroin for 40 suboxone with Brendan MacDonald.  Eelyese Mateo and Christopher Wilkins facilitated this drug deal on behalf of Chisholm.  Although investigators did not seize the heroin, subsequent calls introduced into evidence confirmed that the deal took place.

      g.      In a call on March 27, 2016 (Ex. 169), Chisholm offered to provide Cunha with up to 150 grams of heroin

> Chisholm: I got like 100 150 of that that just been sitting there didn't do nothing.
> Cunha: Is it .. is it what you gave me?
> Chisholm: Yeah, it's that same shit so you don't probably … you don't want that.
> Cunha: Nigga, I don't really care like how long am I gonna have to wait?
> Chisholm: I don't even know how long we're gonna have to wait, I'm hoping fuckin soon, but I'm guessing fucking five four five days.
> Cunha: Na then let me get that then.

In subsequent calls introduced at trial (Exs. 172, 173, 175, 177, and 178), Cunha and Chisholm made plans to meet at the Sea Street market off of Seabrook Street.  Investigators conducting electronic surveillance watched Cunha arrive at the market, disappear off-camera and then re-emerge with Chisholm seconds later.   In a call four days later to arrange another heroin deal, Cunha asked Chisholm if he knew "how much was there" from the March 27, 2016 deal.  Chisholm asked "how much" and Cunha replied "135," indicating that the deal at the Sea Street market was for 135 grams of heroin, and not the 150 grams that Chisholm had promised ("I knew it was supposed to be 150 I probably gave them too much now I'm thinking about it").  Chisholm then promises Cunha an additional 10 grams, and surveillance later saw Chisholm and Cunha meet at Cunha's home.  Chisholm and Cunha were joined by Eelyese Mateo at this meeting, who, as the testimony has shown, is Chisholm's heroin delivery "co-pilot."

9.  Thus, the above referenced calls, which are just a sampling of the drug deals heard by the jury, provide an additional **750 grams** of heroin.

10.  Accordingly, between the Government's heroin seizures and calls, the Government has or will present evidence showing that Defendant Chisholm conspired to distribute approximately **1,775 grams** of heroin. With the cooperating witnesses, the Government's corroborated evidence has shown that Chisholm conspired to distribute at least 10 kilograms of heroin.

### B. Co-Conspirator statements

11.  During the first week of trial, the Government admitted into evidence calls and texts messages between Denzel Chisholm and the following individuals identified by investigators: Molly London, Tyrone Gomes, Eelyese Mateo, Brooke Zartarian, Oliver Hamilton, Stephanie Davis, Christopher Wilkins, Sean Pratt, Brendan MacDonald, Browning Mejia, Cooperating Witness-2, Bethanne Hutchings, Tara McCorkle, Stefan James, Frankie Cunha, William Branch, and Thomas Aseltine. Each of these calls/texts is admissible as admissions of the defendant and Defendant Chisholm has not challenged their admission. *See* Fed. R. Evid. 801(d)(2)(A). *See United States v. Hicks*, 575 F.3d 130, 143-44 (1st Cir. 2009) (recorded statements of non-testifying individual "were not admitted to prove the truth of the matter asserted but rather to provide context for [defendant's] statements, and thus did not violate the Confrontation Clause"); *United States v. Liriano*, 761 F.3d 131, 136-37 (1st Cir. 2014) (same); *United States v. Santiago,* 566 F.3d 65, 69 (1st Cir. 2009) (same); *United States v. Walter,* 434 F.3d 30, 33-34 (1st Cir. 2006) (same).

12.  Many of the calls/statements listed above also qualify as statements of co-conspirators. In that regard, the following defendants were expressly charged as Chisholm's co-conspirators: Tyrone Gomes, Eelyese Mateo, Oliver Hamilton, Stephanie Davis, Christopher

Wilkins, Pratt, Browning Mejia, and Bethanne Hutchings.  Any out-of-court statements made by those individuals are admissible and the heroin weight involving those defendants is attributable to the conspiracy involving Denzel Chisholm.  Richard Serriello also testified to being a co-conspirator of Denzel Chisholm, and Serriello was charged separately in United States v. Serriello, 16-CR-10143-MLW.  Even if this Court completely discounts Serriello's testimony, there is still sufficient evidence to prove that the 400 grams of heroin recovered from Serriello is attributable to Denzel Chisholm, and was distributed as part of the conspiracy.  As noted above, the Government has introduced into evidence coded text messages showing that Chisholm supplied Serriello with the recovered heroin, and the Government will soon introduce into evidence a video where Chisholm explicitly states that the heroin Serriello was caught with came from him, and that Chisholm had been supplying Serriello with 500 grams of heroin each week.  These regular heroin deliveries, coupled with Chisholm's further admissions that Chisholm had been "fronting" the heroin to Serriello ("he owes you for the entire half? …. Yeah"), clearly shows that Serriello was, until the time of his arrest on May 21, 2015, a co-conspirator of Chisholm.

       13.     The only other uncharged co-conspirators that the Government is using to show heroin weight are Brendan MacDonald and Frankie Cunha.  The Government has already introduced evidence showing that on February 27, 2016, Chisholm negotiated the trade of 15 grams of heroin for 40 suboxone strips.  During this coming week, investigators will testify to the surveillance during this drug deal, which showed Eelyese Mateo delivering the heroin to Christopher Wilkins, who then traded it with Brendan MacDonald.  MacDonald was further identified by Agent Hayes as a heroin customer of Chisholm, and Exhibit 91, which is the call

setting up the drug deal, shows a familiar and comfortable relationship between Chisholm and MacDonald.  This relationship is indicative of co-conspirators, rather than just buyer-sellers.

14. Finally, with respect to Cunha, the Government has introduced evidence of two drug deals between Chisholm and Cunha.  The first deal was on March 27, 2016 (135 grams) and the second was on March 31, 2016 (10 grams).  During this coming week, the Government will introduce surveillance surrounding those two drug deals, showing meetings between Chisholm and Cunha.  In addition to this physical and surveillance, the calls indicate a repeated pattern of business that is indicative of a co-conspirator relationship.

15. As examples, in Exhibit 169, a call on March 27, 2016, Chisholm stated that he had only "100 1150 of it which has just been sitting for mad long."  Cunha asked, "Is it what you gave me?"  Chisholm and Cunha then make plans to complete a heroin deal that evening, with Cunha stating he would do the deal "as long as it's the same thing," meaning as long as he picked up the same drugs as last time."  Chisholm replied that it was "not the good shit" but it was the "bullshit that you gave back."  Chisholm further remarked that there was "no more blue … the blue you'll never see that again," referring to a batch of blue heroin that Chisholm had sold to customers in January and February, 2016.  Chisholm and Cunha then completed the deal that evening at Sea Street Market.  Notably, Chisholm did not even know how much heroin he provided Cunha (indicating that Chisholm "fronted" the heroin to Cunha, who he trusted), and it was only in later calls that Cunha told Chisholm that it was 135 grams.  Accordingly, this physical surveillance, coupled with the telephone calls, indicates that Cunha was a regular drug customer of Chisholm, and therefore a co-conspirator.

## CONCLUSION

16. For the reasons set forth above, the drug weight of both MacDonald and Cunha should be taken into account by the jury in calculating drug weight.

Respectfully submitted,

WILLIAM D. WEINREB
ACTING UNITED STATES ATTORNEY

By: /s/Eric S. Rosen
ERIC S. ROSEN
MIRANDA HOOKER
ASSISTANT UNITED STATES ATTORNEYS
617/748-3412

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                              /s/Eric S. Rosen
                                              Eric S. Rosen
                                              Assistant United States Attorney

Date: June 12, 2017