UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA,

*Plaintiff,*

v.                                                    1:16-cr-10096-PBS

DENZEL CHISHOLM et al.,

*Defendants.*

---

## DENZEL CHISHOLM'S SENTENCING MEMORANDUM

### INTRODUCTION

The United States Attorney's Office has invoked its power to mandate that this Court sentence Denzel Chisholm to at least twenty years of imprisonment. 21 U.S.C. §§ 841(b)(1)(A), 851 (2012). This Court has no power or discretion to impose a sentence shorter than twenty years, regardless of how it views the facts or implications of this case, the characteristics of the defendant, or the well-established purposes of sentencing. *Contrast* 18 U.S.C. § 3553(a). The mandatory sentence of twenty years has no nexus to Mr. Chisholm's ability to rehabilitate. *See id.* § 3553(a)(2)(D). It is not tied to this Court's ability to deter the defendant or others from the crime of heroin distribution. *See id.* § 3553(a)(2)(B). And it is <u>nearly five times</u> the fifty-one month average sentence for drug trafficking in this jurisdiction, despite the § 3553(a)(6) requirement that this Court avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2016, District of Massachusetts*, tbl. 7 (Apr. 2017),

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2016/ma16.pdf.

The twenty-year minimum is not a product of the stated sentencing objectives of § 3553; it is an arbitrary and unscientific doubling of the statutory mandatory minimum for his crime of conviction. Sentencing Mr. Chisholm to twenty years in prison will exclude him from his family and from the human experience in ways hard to capture, and is far greater than "'a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)).

Time is abstract, but the following attempt to describe the full measure of twenty years:

- Twenty years ago, Bill Clinton was beginning his second term as President. The internet was just starting. There was no Google, no Facebook, no iPods, iPads, or iPhones. Boston sports were dismal, with no real memory of championships.

- Twenty years from now, Denzel Chisholm will be forty-seven-years old. His triplets, Isaiah, Dantae, and Kaychaun, will be twenty-seven. His youngest two children will be in their early twenties.

- Twenty years is 240 months is 7,300 nights locked in a small room. Twenty years is 21,600 meals supplied by the lowest bidder and prepared by fellow inmates.

- Twenty years is nearly five times the fifty-one month average for drug trafficking sentences issued in 2016 in this District. *See* U.S. Sentencing Comm'n, *Statistical Information Packet, Fiscal Year 2016, District of Massachusetts*, tbl. 7 (Apr. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2016/ma16.pdf.

- Twenty years is longer than the national average Federal murder sentence for the first three-quarters of 2017 (235 months). *See* U.S. Sentencing Comm'n, *Quarterly Data Report, 3rd Quarter Release, Preliminary Fiscal Year 2017 Data Through June 30, 2017,* tbl. 6 (Sept. 7, 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_3rd_FY17.pdf.

Put simply, twenty years is a very long time. And as explained below, a term of incarceration no longer than twenty years is an appropriate sentence given (1) the Guideline calculations, (2) the Congressional intent behind the applicable mandatory minimum sentences, and (3) the directives of 18 U.S.C. § 3553(a).

## GUIDELINE SENTENCE AND DEFENDANT'S RECOMMENDATION

The Court should sentence Mr. Chisholm to no more than two hundred forty months of incarceration. In requesting such a sentence, Mr. Chisholm points to several factors:

- The criminal history category should be III, not VI as calculated by the Probation Office, because three of the sentences relied upon by Probation should have been excluded as older offenses committed before Mr. Chisholm turned eighteen. *See* USSG § 4A1.2(d).

- The Government's evidence does not establish that Mr. Chisholm conspired to distribute an amount of heroin that exceeds three kilograms, thus reducing the total offense level by two. USSG § 2D1.1(c).

- The Government's evidence does not establish that Mr. Chisholm was a leader or manager of a criminal activity, thus reducing the total offense level by one. *See* USSG § 3B1.1(c).

- The Government's evidence does not establish that Mr. Chisholm bribed or attempted to bribe a law enforcement officer as part of the offense, thus reducing the total offense level by two. *See* USSG § 2D1.1(b)(11).

- Congress intended to create a mandatory minimum sentence of twenty years for distributing a kilogram or more of heroin in a single transaction, not spread over several transactions. *See* H.R. Rep. No. 99-845, pt. 1, at 11–12 (1986). Consequently, the guideline range[1] overstates the penalty that Mr. Chisholm should receive, and the Court should downwardly depart from the range. *See* USSG ch. 1, pt. A, introductory cmt. 1(3) (2016).

**I.    THE DEFENDANT'S CRIMINAL HISTORY CATEGORY SHOULD BE III BECAUSE THREE OF THE OFFENSES RELIED UPON BY PROBATION FOR ITS CALCULATION MUST BE DISQUALIFIED UNDER USSG § 4A1.2(D).**

Probation's criminal-history determination overstates Mr. Chisholm's criminal history for two reasons. First, Probation adds points for three offenses committed before Mr. Chisholm's eighteenth birthday (*see* PSR ¶¶ 289, 290, 291) even though they should be excluded as being too old. *See* USSG § 4A1.2(d)(2). Second, Probation impermissibly relies on an excluded sentence as a predicate offense for purposes of determining Mr. Chisholm's career-offender status. *See* USSG § 4B1.2(c). As explained below, Mr. Chisholm requests that the Court find that his record calls for no higher than a criminal-history category of III.

---

[1] Based on Mr. Chisholm's calculations, the guideline range is 324 to 405 months. This range is based on a criminal history category of III and a total offense level of 39. *See* USSG ch. 5, pt. A.

The three pre-eighteen cases (PSR ¶¶ 289, 290, 291) concluded long before Mr. Chisholm commenced the instant offense, and must therefore be excluded from the criminal-history analysis. Under the Guidelines, offenses committed prior to a defendant's eighteenth birthday may only be count toward a criminal-history score if the offense "resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted." *See* USSG § 4A1.2 cmt. 7; § 4A1.2(d). A careful examination of the PSR shows that none of the three cases should count because the relevant periods all lapsed before Mr. Chisholm joined the charged conspiracy in early 2015.[2]

The oldest of these cases is a May 4, 2005 delinquency finding against Mr. Chisholm for an attempt to steal a bicycle. PSR ¶ 289. Mr. Chisholm committed the offense when he was 14 years old. *Id.* Although the Barnstable County Juvenile Court committed Mr. Chisholm for more than sixty days, he was released on January 24, 2008. *Id.*

The second oldest case is an August 8, 2007 delinquency finding against Mr. Chisholm for malicious destruction of property and furnishing a false name. PSR ¶ 290. Mr. Chisholm committed the offense when he was sixteen years old. *Id.* The Barnstable County Juvenile Court committed him for more than sixty days. *Id.* Mr. Chisholm went home on January 24, 2008. *Id.* Probation allocated two criminal history points for this case pursuant to its reading of USSG § 4A1.2(d)(2)(A). *See* PSR ¶ 290.

Neither of these two cases may count because Mr. Chisholm committed the offenses prior to his eighteenth birthday and was released from confinement more than five years before the commencement of the instant offense. Section 4A1.2(d)(2)(A), which

---

[2] Although not reflected in the PSR, the evidence at trial showed that Mr. Chisholm did not join the conspiracy until early 2015.

Probation relies on to allocate two criminal history points for each of these offenses, states two points should be added "for each adult or juvenile sentence to confinement of at least sixty days *if the defendant was released from such confinement within five years of his commencement of the instant offense*." *See* USSG 4A1.2(d)(2)(A) (emphasis added). Although the instant conspiracy may have begun on or before January 24, 2013—five years after Mr. Chisholm's release from confinement in these two cases—there is no evidence that Mr. Chisholm joined the conspiracy until after July 2014. *See* PSR ¶¶ 292, 332 (indicating that Mr. Chisholm had been incarcerated from 2010 until July 2014 on a different offense). Given the age of these cases, they should not contribute to Mr. Chisholm's criminal history score. *See* USSG § 4A1.2(d)(2)(A) & cmt. 7.

The third of these cases is a case continued without a finding (CWOF) on October 28, 2008. PSR ¶ 291. Mr. Chisholm committed the offense—possession of marijuana with intent to distribute, a Massachusetts misdemeanor—when he was seventeen years old. *Compare* PSR ¶ 291 (listing date of arrest as July 8, 2008), *with* PSR ¶ 307 ("Denzel Wilbert Chisholm was born on July 19, 1990"). Mr. Chisholm was never committed for the offense, and the Barnstable County District Court dismissed the case on September 9, 2009. PSR ¶ 291. Probation allocated one criminal history point for this case pursuant to its reading of USSG § 4A1.2(f). *See* PSR ¶ 291.

This third case does not count because Mr. Chisholm committed the offense prior to his eighteenth birthday, was never sentenced to confinement, and was sentenced more than five years before the commencement of the instant offense. Section 4A1.2(f), which Probation relies on to allocate one criminal history point for this case, does not apply because Mr. Chisholm committed the offense before turning eighteen. *See* USSG § 4A1.2(d) & cmt. 7. Likewise, § 4A1.2(d) does not permit the allocation of any criminal-

history points for this offense because the offense did not result in a "sentence to confinement of at least sixty days," *see* USSG ¶ 4A1.2(d)(2)(A), nor was the sentence imposed "within five years of the defendant's commencement of the instant offense." *See* USSG § 4A1.2(d)(2)(B). At the October 28, 2008 sentencing, the Barnstable County District Court imposed no sentence of confinement. *See* PSR ¶ 291. Five years after this sentencing—in October 2013—Mr. Chisholm was still in prison for a different offense and uninvolved in the instant conspiracy. *See* PSR ¶¶ 292, 332. The offense should therefore not contribute to Mr. Chisholm's criminal history score. *See* USSG § 4A1.2(d) & cmt. 7.

Without these three cases contributing to Mr. Chisholm's criminal history score, Mr. Chisholm's criminal history score is five. *See* PSR ¶¶ 292, 294. He should receive no enhancement as a career offender because one of the predicate prior convictions that Probation relies on is the disqualified marijuana CWOF that does not count toward his criminal history score. *See* USSG § 4B1.2(c) (requiring that the predicate sentences for career offender status "count[] separately under the provisions of § 4A1.1(a), (b), or (c)"). Mr. Chisholm's criminal history category is therefore III. *See* USSG ch. 5, pt. A.

## II.     MR. CHISHOLM'S TOTAL OFFENSE LEVEL SHOULD BE 39 INSTEAD OF PROBATION'S 43.

Probation's determination of Mr. Chisholm's total offense level also overstates his actual offense level by four[3] levels. As explained more fully below, the base offense level should be 30 instead of 32 to reflect an attributable quantity of less than three kilograms of heroin; the two-level enhancement for bribing a law enforcement officer

---

[3] The full extent of the overstatement is five levels. But because offense level is capped at 43, Probation's recommendation is 43 rather than 44. *See* PSR ¶ 286.

does not apply; and a three-level enhancement, rather than a four-level enhancement, should apply for Mr. Chisholm's supervisory role in the offense.

> ### A.   The Government's credible evidence does not prove the trafficking of over three kilograms of heroin.

For purposes of sentencing, Mr. Chisholm does not dispute that between one and three kilograms of heroin are attributable to the conspiracy. *Cf.* PSR ¶ 272. The issue, here, instead is what to make of the Government's allegation that the amount of heroin exceeded three kilograms and ten kilograms. *See* Gov't's Sentencing Mem. at 9, ECF No. 869.

To prove that Mr. Chisholm trafficked between three and ten kilograms of heroin, the Government needs the Court to make a kind of factual compromise. Yet nobody asserts that the actual, factual amount is between three and ten kilograms of heroin. On the one hand, the Government—and Probation—argues that Mr. Chisholm was involved in the distribution of the following amounts of heroin as relevant conduct, in addition to the 2.227 kilograms accounted for "through controlled buys, seizures, and intercepted calls":

| Name | Amount |
|------|--------|
| Brooke Cotell | "at least 500 grams" (≥ 0.5 kg) |
| Richard Serriello | "9 kilograms" (9 kg) |
| Stephanie Davis | "kilograms" (≥ 1 kg) |
| Anthony Hall | "at least 1200 grams" (≥ 1.2 kg) |
| **Total** | **≥ 0.5 kg + 9 kg + 1 kg + 1.2 kg = 11.7 kg** |

*See* PSR ¶ 272. On the other hand, the Government believes that the applicable quantity range is less than ten kilograms. *See* Gov't's Sentencing Mem. at 11, ECF No. 869; *accord* PSR ¶ 274. To sustain that belief, the Government tacitly asks the Court to disbelieve the

testimony—at least in part—that suggests the involvement of the additional 10-plus kilograms of heroin. *See* PSR ¶ 272.[4]

Instead of compromising, the Court should simply discredit the testimony of these witnesses (and in the case of Anthony Hall, non-witnesses). Mr. Serriello's dramatic flip-flop over the first two days of testimony revealed him to be a willing liar, but Ms. Cotell and Ms. Davis's testimony also lacked sufficient indicia of reliability to prove Mr. Chisholm's involvement in specific amounts of heroin. To the extent that the Government relies on this testimony, the Court should discredit it. Unless the Government seized and tested or otherwise confirmed a substance was an amount of heroin, the Court should not aggregate the amounts against Mr. Chisholm.

What remains are the quantities accounted for by the seized and tested heroin, which total less than three kilograms. *See, e.g.*, PSR ¶¶ 269–71. The Court should therefore find the base offense level to be the one-to-three-kilogram Guidelines number of 30. *See* 2D1.1(c)(5).

### B.    Mr. Chisholm did not bribe or attempt to bribe a law enforcement officer, so he should receive no enhancement pursuant to USSG § 2D1.1(b)(11).

The two-level enhancement for bribing or attempting to bribe a law enforcement officer should not apply because Mr. Chisholm neither bribed nor attempted to bribe a law enforcement officer. For the unlawful trafficking of a controlled substance, the Guidelines Manual provides that "[i]f the defendant bribed, or attempted to bribe, a law

---

[4] While the sum of amounts reflected in the table amounts to at least 11.7 kilograms of heroin, some of these amounts overlap with sums seized from those individuals. *See* PSR ¶¶ 270, 272. For example, law enforcement seized 400 grams from Mr. Serriello. PSR ¶ 270. Assuming Mr. Serriello obtained this 400 grams of heroin from Mr. Chisholm, it is already included in the amount that he testified that he received from Mr. Chisholm.

enforcement officer to facilitate the commission of the offense, increase [the offense conduct] by 2 levels." USSG § 2D1.1(b)(11). The Court should not apply this enhancement here for two reasons: (1) Mr. Chisholm was not personally involved in any purported bribe, and (2) the purported bribe was of a correctional officer, not a law-enforcement officer.

The sentencing enhancement only applies when a defendant personally bribes or attempts to bribe a law enforcement officer. Although the Guidelines generally consider certain acts of coconspirators as relevant conduct for purposes of deciding whether enhancements apply, the Guidelines may "otherwise specif[y]." *See* USSG § 1B1.3(a)(1)(B). The bribery enhancement specifies that it applies when "the defendant bribe[s], or attempt[s] to bribe, a law enforcement officer." *Compare* USSG § 2D1.1(b)(11) (emphasis added), *with* § 2D1.1(b)(1) (specifying its application when "a dangerous weapon (including a firearm) [is] possessed," without specifying who possesses the weapon). Consequently, the enhancement only applies if the Government proves that *Mr. Chisholm* bribed or attempted to bribe a law enforcement officer. *See United States v. Lobo*, No. 15-cr-174-LGS, 2017 U.S. Dist. LEXIS 102106, *14 (S.D.N.Y. June 30, 2017) (declining to apply the USSG § 2D1.1(b)(11) enhancement where the Government failed to establish that the "Defendant himself 'bribed, or attempted to bribe' law enforcement"). On this front, the Government makes no such allegation that Mr. Chisholm personally conducted the bribe. *See* Gov't's Sentencing Mem. at 7, 9 (Sept. 10, 2017), ECF No. 869. At best, the evidence suggests that Browning Mejia wanted Mr. Chisholm to pay a correctional officer, but that Mr. Chisholm did not want to make the payment. *See* PSR ¶¶ 231–32. Absent evidence of Mr. Chisholm's personal payment or attempt to pay a bribe, the enhancement cannot apply. *See* USSG § 2D1.1(b)(11).

The enhancement is also inapplicable because Mr. Mejia purportedly paid the bribe to a correctional officer, not a "law enforcement officer" within the meaning of the Guideline provision. The Guideline provision does not define "law enforcement officer," but other Guideline provisions distinguish "law enforcement officer" from "correctional officer." *See, e.g.*, USSG §§ 2P1.1(b)(4), 2P1.2(b)(1). *Cf. also* USSG § 2C1.1(b) & cmt. 1 (defining "public official" to include any "officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such department, agency"). The 2D1.1(b)(11) enhancement should therefore not apply to bribes targeting "correctional officer[s]" instead of "law enforcement officers." *Cf. United States v. Newman*, 982 F.2d 665, 673 (1st Cir. 1992) (applying the principle of *expressio unius est exclusio alterius* in interpreting the Guidelines). Here, Mr. Mejia targeted a correctional officer, not a law enforcement officer, for bribery. *See* PSR ¶¶ 229–32. Because no law enforcement officer was involved in the bribery, the sentencing enhancement should not apply. *See* 2D1.1(b)(11).

### C. The evidence does not prove that Mr. Chisholm was an organizer or leader instead of a manager or supervisor.

A four-level enhancement for Mr. Chisholm's role in the offense is unwarranted where he acted more like a manager or supervisor instead of an organizer or leader. The Guidelines distinguish between "organizer[s]" and "leader[s]" on the one hand and "manager[s]" and "supervisor[s]" on the other, with the former receiving a four-level enhancement and the latter received a three-level enhancement for their respective roles in the offense. *See* USSG § 3B1.1(a)–(b). The comments to § 3B1.1 list factors courts may use to evaluate a defendant's role, including "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of

accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." *See* USSG § 3B1.1 cmt. 4. An analysis of these factors suggests that Mr. Chisholm was a manager or supervisor, not a leader or organizer.

First, Mr. Chisholm did not play a significant role in planning and organizing the offense because the conspiracy started years before Mr. Chisholm joined. The Government's indictment alleged that the heroin conspiracy began no later than in 2011. *See* Third Superseding Indictment at 2, Mar. 1, 2017, ECF No. 385. As the PSR makes clear, Mr. Chisholm was incarcerated at the time and was not released until July 2014. *See* PSR ¶ 332. His involvement, therefore, in planning and organizing the offense must have been far less than the involvement of the true organizers and leaders who started the conspiracy.

Nor does the business of selling drugs necessarily imply that a mid-level supplier like Mr. Chisholm has extensive control and authority over retail-level distributors.[5] The content of the communications between Mr. Chisholm and his customers does not show a relationship of control. They show customers complaining to him about the poor quality of the product or asking for more product, communications less indicative of Mr. Chisholm's control of these customers than his subservience to them. Furthermore, the evidence at trial showed that those who purchased heroin from him— including Mr. Serriello, Ms. Cotell, and Mr. Miller—purchased from others as well. The fact that customers bought from others suggest that Mr. Chisholm lacked control over

---

[5] There are many examples of retailers—like Walmart—who in fact exercise far greater control over their suppliers than vice versa.

them. Even "fronting" does not imply control; it is simply an extension of credit with a condition of payment on a later date. *See* PSR ¶ 109.

Furthermore, while extensive, Mr. Chisholm's activity was not as wide in scope as the Government argues, and the Government's claim that Mr. Chisholm was the largest drug dealer on the Cape cannot survive scrutiny. If true, the series of arrests in early 2016 that this case resulted in should have marked a noticeable drop in opioid-related deaths on the Cape. Yet there were more overdose deaths in Barnstable County in 2016 than in previous years. *See* Mass. Dep't Public Health, *Number of Opioid-Related Overdose Deaths, All Intents by County, MA Residents: 2000-2016* (Aug. 2017), https://www.mass.gov/files/documents/2017/08/31/overdose-deaths-by-county-including-map-aug-2017.pdf (showing increases in 2016 for nearly every county in Massachusetts). In fact, the number of deaths in Barnstable Town increased by nearly seventy percent from 13 in 2015 to 22 in 2016. *See* Mass. Dep't Public Health, *Number of Opioid-Related Overdose Deaths, All Intents by City/Town, MA Residents January 2012– December 2016* (Aug. 2017), https://www.mass.gov/files/documents/2017/08/31/town-by-town-listings-aug-2017.pdf. While Mr. Chisholm's behavior certainly contributed to the opioid epidemic, the criminal activity attributable to him was not as extensive as the Government wants the Court to believe. *See id.* As the overdose numbers evince, others played larger roles, since removing Mr. Chisholm from the market did little to stop the heroin problem on the Cape. *See id.*

To be sure, Mr. Chisholm managed a few individuals like Ms. Mateo. But management is not organization under the Guidelines. Because Mr. Chisholm was a

manager not an organizer, he should only receive a three-level enhancement for his role in the offense. *See* USSG § 3B1.1.

### III.   CONGRESS DID NOT INTEND THE TWENTY-YEAR STATUTORY MINIMUM TO APPLY WHERE THE GOVERNMENT MEETS THE QUANTITY THRESHOLDS BY AGGREGATING AMOUNTS OVER SEVERAL TRANSACTIONS AND DATES.

With a criminal history category of III and a total offense level of 39, the Guidelines recommend a sentence of within the 324 to 405 month range. *See* USSG ch. 5, pt. A. Yet this sentencing range exceeds what Mr. Chisholm should receive based on Congress's intent in implementing the Anti-Drug Abuse Act of 1986 that forms the basis for the Guidelines range.

While the Sentencing Commission created the Guidelines largely from empirical sentencing data, the Commission recognized that certain statutes "required departure [from the data], as in the case of the Anti-Drug Abuse Act of 1986 that imposed increased and mandatory minimum sentences." *See* USSG ch. 1, pt. A, introductory cmt. 1(3) (2016). *Accord Dorsey v. United States*, 567 U.S. 260, 267–68 (2012) (describing the Commission's process). Here, Mr. Chisholm does not match Congress's intended target for the mandatory minimum sentences of the Anti-Drug Abuse Act of 1986. *See* H.R. Rep. No. 99-845, pt. 1, at 11–12 (1986); *accord* 132 Cong. Rec. 27,193–94 (Sept. 30, 1986) (statement of Sen. Byrd). The Court should therefore depart from the Guidelines and impose a sentence of no more than two hundred forty months.

The strict application of the Guidelines against Mr. Chisholm undermines the Congressional intent to stratify punishment for, on the one hand, "major traffickers, the manufacturers or the heads of organizations, who are responsible for creating and delivering very large quantities of drugs," from, on the other hand, "managers of the retail level traffic, the person who is filling the bags of heroin … and doing so in

substantial street quantities." *See* H.R. Rep. No. 99-845, pt. 1, at 11–12.[6] For heroin, the

quantity Congress settled on for these "major traffickers … who are responsible for

creating and delivering very large quantities of drugs" was one kilogram. *See id.* at 17;

21 U.S.C. § 841(b)(1)(A)(i) (2012). By contrast, one hundred grams of heroin would

trigger the penalty for the "managers." *See* H.R. Rep. No. 99-845, pt. 1, at 17; 21 U.S.C. §

841(b)(1)(B)(i). For quantities of heroin, "which if possessed by an individual would

likely be indicative of operating at [these] levels," these numbers make sense. *See* H.R.

Rep. No. 99-845, pt. 1, at 12. But for aggregable amounts, they do not.

If the law allows the aggregation of amounts, even street-level dealers become major

traffickers. Stephanie Davis, an addict, testified at trial that she consumed four to five

grams of heroin a day. If an addict purchases four to five grams per day, she exceeds

the one kilogram mark in less than eight months—a mere two months more than the

time the ATF wiretaps were active in this case.[7] In other words, aggregation allows the

conclusion that the dealer selling to this addict is a "major trafficker" under the statute,

even if this addict is the dealer's only customer. This result goes against Congress's

intent in establishing the one kilogram threshold. *See* H.R. Rep. No. 99-845, pt. 1, at 11–

12. To avoid this result, the Court should therefore downwardly depart and impose a

lower sentence than the guidelines recommend.

---

[6] This report from the Committee on the Judiciary of the House or Representatives recommended the adoption of the Narcotics Penalties and Enforcement Act of 1986, H.R. 5394, 99th Cong. (1986). *See* H.R. Rep. No. 99-845, pt. 1, at 1. Congress enacted this bill, with amendments, as part of the Anti-Drug Abuse Act of 1986. *See* Anti-Drug Abuse Act of 1986, Pub. L. 99-570, 100 Stat. 3207-2.

[7] This calculation assumes a purchase of 4.5 grams (or 0.0045 kilograms) per day. One kilogram divided by 0.0045 kilograms per day yields less than 223 days. In a non-leap year, the two hundred twenty-third day is August 11, which is less than eight full months into the year.

Here, there has been no allegation that Mr. Chisholm, or anyone else in the conspiracy, was a "manufacturer[] or the head[] of [an] organization[], who [was] *responsible for creating and delivering very large quantities of drugs.*" *See* H.R. Rep. No. 99-845, pt. 1, at 11–12 (emphasis added). Instead, the Government carefully details how Mr. Chisholm and others were *not* responsible for creating and delivering very large quantities of heroin, instead getting their heroin from some other source. *See* PSR ¶¶ 146–50 (describing a purported "resupply of heroin"). In other words, someone else supplied Mr. Chisholm and his friends, who were at most "managers of the retail level traffic, the person who is filling the bags of heroin … and doing so in substantial street quantities." *See* H.R. Rep. No. 99-845, pt. 1, at 11–12. As such, the Guideline sentence for Mr. Chisholm overstates Congress's intended penalty for heroin trafficking of this extent. The Court should therefore impose a sentence below the Guidelines range.

## IV.  OTHER FACTORS STATED IN 18 U.S.C. § 3553(A) SIMILARLY MILITATE IN FAVOR OF A SHORTER SENTENCE.

One of the professional pleasures of criminal defense comes from learning and telling a client's story which theretofore had never been told. But in this case, Mr. Chisholm's story has been difficult to learn and tell—not because there is no story about himself—but because Mr. Chisholm has consistently resisted excusing his actions with his personal history and characteristics. As amiable and charismatic as Mr. Chisholm is to his friends and strangers alike, talking about his background simply does not come naturally to him. One can only surmise that his naturally optimistic disposition has forced Mr. Chisholm to distance himself from the extraordinary obstacles and challenges that helped shape the fateful decisions that put him before the Court now. Yet those very obstacles and challenges also paint a dramatic picture of Mr. Chisholm's life, a life that deserves understanding and sympathy even if Mr. Chisholm disagrees.

As explained below, the "nature and circumstances of the offense and the history and characteristics" of Mr. Chisholm show that Mr. Chisholm was a young man trying to make the most of an awful childhood who survived in part by making terrible choices. *See* 18 U.S.C. § 3553(a)(1). In light of these circumstances, defense counsel requests that the Court impose a twenty-year sentence, which is no longer than necessary to achieve our system's criminal-justice goals.

###      A.      Mr. Chisholm's difficult childhood sheds light on his struggles with the law.

Mr. Chisholm was born to a teenage exotic dancer, her third child in less than three years. Their house was ill-suited for children, and Mr. Chisholm suffered from lead poisoning as an infant living there. Before Mr. Chisholm turned four years old, his father was no longer around, having been sentenced and locked up in state prison on weapons and drug charges. His mother began living with another man, whom Mr. Chisholm still calls his stepfather. This stepfather was purportedly a positive influence on Mr. Chisholm, yet the stepfather and his mother would buy and smoke marijuana at home even as they struggled with money.

When Mr. Chisholm was eleven, his stepfather and mother separated when his stepfather learned his mother had cheated on him. His stepfather moved out. His mother quit her job.

His mother was against public assistance. But without a job, she was unable to keep her five surviving children fed, clothed, and housed.[8] From this period, Mr. Chisholm remembers living in a shelter and having scarce food and clothes.

As a hungry, poorly clothed, nearly homeless child, Mr. Chisholm struggled at school. His diagnosed Attention Deficit and Hyperactivity Disorder only made things

---

[8] One of her children—Mr. Chisholm's half sister Sierra—died of SIDS as an infant.

harder. The school placed him in special education classes, but Mr. Chisholm would miss class, fall asleep during class when he attended, and otherwise have difficulty following his teachers' instructions.

At fourteen years old, Mr. Chisholm started living on his own when his mother kicked him out after an argument. He would occasionally move back in with his mother and family, but tensions within the family made it impossible for him to stay long. He lived with friends when he could, but he struggled to stay in school. He dropped out in ninth grade.

Outside of school, he found solace with friends and built lasting relationships with many of them. These friends included Mr. Chisholm's girlfriend Arianna Taylor, who is also mother to four of his children. They also included Christian Chapman, who lent clothes to Mr. Chisholm and offered him a place to stay when Mr. Chisholm had nowhere to sleep at night.

Unfortunately, without the structure of a functional home life and school, Mr. Chisholm also fell into trouble. By age sixteen, Mr. Chisholm was serving stints of confinement in DYS custody for petty offenses. *See* PSR ¶¶ 289-90. At age eighteen, Mr. Chisholm was arrested and convicted of trafficking oxycodone. He was sentenced to imprisonment in state prison, and was not released until he was twenty-four years old. By then, his triplet sons Isaiah, Dantae, and Kaychaun were already going on five years old.

It is within this context that Mr. Chisholm, a felon on parole, found himself trying to find work to support himself and his family. It is within this context that Mr. Chisholm reconnected with his friends after his release from prison. It is within this context that Mr. Chisholm entered the heroin trafficking conspiracy.

Fundamentally, Mr. Chisholm's choice to break the law came down to ideas he inherited from his mother. He did not want to be a burden; he did not want to go on public assistance. So when his seasonal jobs cleaning houses and detailing cars failed to pay off, Mr. Chisholm started buying and selling heroin—not out of malice, but out of a skewed sense of responsibility. And the modest success Mr. Chisholm achieved in the endeavor reflected his work ethic and interpersonal skills, misapplied as they were in committing a crime.

Mr. Chisholm does not approve of this kind of narrative of his life. He sees himself as fully responsible for his decisions and actions. He even wishes to take the blame for his friends, since he does not want them to suffer. But this kind of narrative is necessary to reveal the fundamental values that drive Mr. Chisholm and the kernel of good amidst a sea of bad. In other words, this narrative suggests that rehabilitation, through an appropriate sentence, is possible.

**B.    A twenty-year sentence satisfies the retributive, incapacitation, and deterrent purposes of sentencing.**

Notwithstanding the Government's request for a sentence of 420 months, a twenty-year sentence is sufficient and no longer than necessary, as required under 18 U.S.C. § 3553(a).

First consider deterrence as embodied in § 3553(a)(2)(B). Would a person willingly commit a crime if facing twenty years, but not if facing thirty-five years? No rational actor would value that difference meaningfully, and no irrational actor should guide this Court's pursuit of deterrence.

Next is the incapacitation promoted in § 3553(a)(2)(C), and the rehabilitation of Mr. Chisholm encouraged by § 3553(a)(2)(D). A twenty-year term of imprisonment certainly accomplishes incapacitation—Mr. Chisholm loses twenty prime years of his life. As for

rehabilitation, if this Court cannot trust the U.S. Bureau of Prisons to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment" within twenty-years, *see* § 3553(a)(2)(D), there can be no compelling reason to believe it could accomplish them in thirty-five years.

That leaves this Court with the retributivist principles embodied in §3553(a)(2)(A). Retribution is the gravamen of the Government's sentencing memorandum, which devotes pages to uncharged conduct and the global issues of the heroin epidemic. The Government tries to place the national and regional heroin epidemic at Mr. Chisholm's feet. But in reality, Mr. Chisholm was a functionary, with his role immediately assumed by another upon his arrest. Barnstable had a heroin problem before Denzel Chisholm, and it still has a heroin problem. Mr. Chisholm is not patient zero.

The facts at trial also belie the Government's argument that Mr. Chisholm controlled the largest drug trafficking organization on the Cape. The Government spent months watching Mr. Chisholm's every move, listening to his every call, and intercepting his every text message. The Government converted a slew of addicts and dealers into witnesses, who then made wild claims about phantom kilos never seen by fleets of law enforcement and never recovered from buys or seizures. Yet through all this effort, the Government merely trickled across the one kilogram threshold to trigger their target mandatory minimum sentence. As for the rest of the heroin that would support the Government's claim about the DTO's size, the only evidence of it rests in self-serving and contradictory testimony. Because the scale of the offense is far smaller than the Government claims, the Court's sentence should likewise by much smaller than the Government requests.

**C.    A twenty-year sentence would not result in unwarranted sentence disparities.**

Finally, a sentence of twenty years would not be an outlier. Section 3553(a)(6) requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). While defense counsel has found no cases with the exact same parameters as Mr. Chisholm's case, many similar cases exist that suggest the reasonableness of a twenty-year sentence.

In *United States v. Martinez-Tejada*, this Court once stated that "I have seen, unfortunately, drug conspiracies this big in New England but not many. Over 22 years, not many. This is among the largest I've seen." *See* Tr. Sentencing Hr'g 43:8–10, *United States v. Martinez-Tejada*, No. 15-10224-PBS (D. Mass. Oct. 4, 2016). In that case, much like here, the Government requested that the Court include drug amounts testified-to, but never weighed or tested. This Court rejected that request. What remained were 25.57 kilograms of fentanyl and over $1.1 million in cash and laundered proceeds. Even so, this Court sentenced Mr. Martinez-Tejada to a mere 292 months of incarceration.

By contrast, Mr. Chisholm's PSR asserts that less than 2.227 kilograms of heroin were seized and tested during the entire eight-month investigation, and only $9,215.00 were found when agents arrested Mr. Chisholm. *See* PSR ¶¶ 261, 269–71. Mr. Chisholm had less than one tenth of the amount of (the far less potent) heroin,[9] and less than one hundredth of the cash this Court attributed to Mr. Martinez-Tejada when it sentenced Mr. Martinez-Tejada to 292 months.

---

[9] Notably, the drug weight equivalence ratio for heroin to fentanyl is two and a half to one. *See* USSG § 2D1.1(c). In other words, one kilogram of fentanyl is treated like two and a half kilograms of heroin under the Guidelines. *See id.*

Although quantities like those found in *United States v. Martinez-Tejada* are rare, this Court has resolved many heroin distribution cases involving defendants with high criminal history scores. In *United States v. Peters* (10-cr-10247-PBS) this Court found the defendant to be guilty of heroin distribution and a career offender. The Court imposed a below guidelines sentence of 144 months. In *United States v. Quintana* (10-cr-10117-PBS) this Court found the defendant to be guilty of heroin and cocaine distribution and a career offender. The Court imposed a sentence of 194 months. In *United States v. Vizcaino* (10-cr-10366-PBS), this Court found the defendant to be guilty of heroin distribution and a career offender. The Court imposed a sentence of 144 months. In *United States v. Carabello* (14-cr-10087-PBS), this Court found the defendant to be guilty of heroin distribution and a career offender. The Court imposed a below guidelines sentence of 132 months. In *United States v. Sanjurjo* (14-cr-10324-PBS), this Court found the defendant to be guilty of heroin distribution and a career offender. The Court imposed a below guidelines sentence of seventy-six months. These cases show that a twenty-year sentence would not be extreme and in fact align with sentences this Court previously imposed in other similar cases. The Court should therefore impose a sentence no longer than twenty years.

## CONCLUSION

For these reasons, Mr. Chisholm respectfully requests that the Court sentence him to a term of imprisonment not to exceed two hundred forty months.

Respectfully submitted,

Date: September 13, 2017

/s/Leonard E. Milligan III
Leonard E. Milligan III #668836
Milligan Rona Duran & King LLC
50 Congress Street, Suite 600
Boston, MA 02109

lem@mrdklaw.com
Tel. (617) 395-9570 x101
Fax (855) 395-5525

*Counsel for Defendant Denzel Chisholm*

## CERTIFICATE OF SERVICE

I, Leonard E. Milligan III, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this date.

Date: September 13, 2017          /s/Leonard E. Milligan III
                                  Leonard E. Milligan III